IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, David Gardner, a Law Enforcement Officer with the Federal Bureau of Investigation

(FBI), being duly sworn, deposes and states:

## INTRODUCTION

1.      Affiant makes this affidavit in support of a criminal complaint and arrest warrant.

This affidavit is based upon information that Affiant has gained through training and experience,

as well as upon information relayed by other individuals, including law enforcement officers.

This affidavit is being submitted for the limited purpose of establishing probable cause to secure

an arrest warrant.  As a result, Affiant has not included every fact known in the investigation.

2.      Affiant submits, as set forth below, that there is probable cause to believe that

INDERJIT SINGH GREWAL violated 18 U.S.C. §§ 1349 and 1343 (i.e., conspiracy and wire

fraud).

## TRAINING AND EXPERIENCE

3.      Affiant has been a Special Agent with the FBI for 23 years, stationed in

Greensboro, North Carolina, Budapest, Hungary, and Cleveland and Sandusky, Ohio, and has

received training at the FBI Academy in Quantico, Virginia.  Affiant has conducted

investigations that led to successful prosecutions involving fraud, federal drug and firearms laws,

crimes of violence, and child exploitation.  Affiant is currently assigned to the Sandusky

Resident Agency of the FBI, which is responsible for investigating federal matters in Erie,

Huron, Ottawa, Sandusky, and Seneca County, Ohio.  As such, Affiant investigates crimes

involving child exploitation, narcotics trafficking, interstate threats, bank robbery, and mail and

1

wire fraud.  I have conducted and been involved in numerous successful federal investigations including narcotics trafficking, bank robbery, extortion, and mail and wire fraud schemes. Affiant has written numerous affidavits and participated in the execution of numerous search warrants and the seizure of evidence in support of these investigations.  Affiant has a Bachelor's and Master's degree in accounting and business administration and worked in those fields for five years before becoming an FBI agent.

## PROBABLE CAUSE

4.      In late November 2019, Affiant began an investigation into the activities of INDERJIT SINGH GREWAL, Known Subject 2 (KS2), and others as it relates to conspiracy and wire fraud regarding the purchase and renovation of the Maui Sands Resort (hereinafter referred to as the Maui Sands Resort).  The Maui Sands Resort is a 300-room hotel and indoor waterpark located on Milan Road in Perkins Township, Erie County, Ohio.  The investigation was initiated after interviewing P.G., of Farmington Hills, Michigan.  As will be demonstrated below, there is probable cause to believe that INDERJIT SINGH GREWAL, KS2, and others conspired to conduct wire fraud regarding the purchase and renovation of the Maui Sands Resort in violation of 18 U.S.C. §§ 1349 and 1343 (i.e., conspiracy and wire fraud).

INTERVIEW OF LENDER P.G.

5.      On November 25, 2019, P.G. was interviewed at the Perkins Township, Ohio Police Department by Affiant and others and advised the following.  P.G. is the CEO of a business bearing his name in Farmington Hills, Michigan.  P.G. is a real estate developer in the Detroit, Michigan area.

FRAUD REGARDING THE LOAN TO PURCHASE MAUI SANDS

6.       P.G. advised that in approximately September 2018, P.G. provided a $7,000,000 loan to INDERJIT SINGH GREWAL in order for INDERJIT SINGH GREWAL, doing business as Vintro Hotels and Resorts Ohio, LLC, to purchase the Maui Sands Resort.  Of the $7,000,000 loan, $2,000,000 was placed in escrow with an attorney, T.B., for future construction and repair costs for the Maui Sands Resort.  P.G. advised that INDERJIT SINGH GREWAL initially went to a loan broker, later identified as P.B., that contacted a second loan broker, later identified as M.M.  P.G. was previously acquainted with M.M.  In approximately July 2018, P.G. began communications with INDERJIT SINGH GREWAL and KS2, an associate of INDERJIT SINGH GREWAL, regarding P.G. providing a loan for INDERJIT SINGH GREWAL to purchase the Maui Sands Resort.  INDERJIT SINGH GREWAL was initially looking for a $14 million loan and INDERJIT SINGH GREWAL was claiming that he was going to bring $4 - 5 million "to the table."  P.G. was only interested in lending half of the amount desired, $7 million, and P.G. wanted INDERJIT SINGH GREWAL and KS2 to find someone else to loan the other half of the funds.  INDERJIT SINGH GREWAL was representing that he was purchasing the Maui Sands Resort for $18,950,000.

7.       On November 25, 2019, P.G. provided a copy of the purchase agreement for the sale of the Maui Sands Resort dated January 23, 2018.  Affiant reviewed the purchase agreement and identified that the agreement was between E.S. LLC, the seller, and Vintro Group of Companies, LLC, the buyer.  The purchase agreement was later assigned from Vintro Group of Companies, LLC to Vintro Resorts and Hotels Ohio, LLC.  INDERJIT SINGH GREWAL is the managing member of both companies.  The purchase price set forth in the purchase agreement was $18,950,000.  Section 14.8 of the purchase agreement sets forth that all notices, demands, or requests made pursuant to the agreement should be provided to the buyer as follows:

Vintro Group of Companies, LLC
XXXX Brickell Avenue, Suite XXX-XX
Miami, Florida 33131
Attention:     INDERJIT SINGH GREWAL
Email:          inderjitgs@yahoo.com
Telephone:   530-XXX-XXXX

8.      P.G. advised that prior to funding the loan, it was agreed that the loan would be a one-year bridge loan[1].  P.G. received some financials on Maui Sands prior to the sale.  P.G. advised that the financials assisted P.G. in determining if the Maui Sands Resort was making sufficient income to cover the payments on the loan.

9.      P.G. also received INDERJIT SINGH GREWAL's personal financials, including a personal financial statement, showing that INDERJIT SINGH GREWAL had assets of $85 million and liabilities of $29 million.  INDERJIT SINGH GREWAL also stated that his family had a trust, later identified as the J&J Trust, that was valued at $100 million - $300 million.  INDERJIT SINGH GREWAL's personal financials and INDERJIT SINGH GREWAL's representations regarding the trust assisted P.G. in determining INDERJIT SINGH GREWAL's creditworthiness.[2]  P.G. relied on the representations provided to him to make his decision to fund the $7 million loan.

10.      P.G. provided a copy of a document titled "Inderjit Grewal, XXX Shady Drive, Branson, MO 65616."  The document lists various investment properties, business real estate, business enterprise value, and personal assets totaling $85,733,540 and liabilities in reference to those same assets totaling $29,422,000.

---

[1] A bridge loan is a type of short-term loan, typically taken out for a period of 2 weeks to 3 years pending the arrangement of larger or longer-term financing.
[2] Commercial real estate lenders often evaluate the creditworthiness of borrowers.  Evaluations include analysis of the borrower's overall financial condition including assets (type, amount, and liquidity), cash flow, liabilities, as well as any other repayment sources that may be available to a lender in the event of default on the loan.

11.     P.G. advised that INDERJIT SINGH GREWAL never found anyone else to fund the other half of the loan and P.G. agreed to loan the $7 million after INDERJIT SINGH GREWAL advised that he would bring $14 million from his family trust as a loan for the purchase.  This statement by INDERJIT SINGH GREWAL represented a total funding of $21 million for the purchase and renovation of the Maui Sands Resort.  The additional amount of approximately $2 million beyond the "agreed" upon purchase price was for improvements to the resort.

12.     P.G. advised that INDERJIT SINGH GREWAL's wife, M.D., is the trustee of INDERJIT SINGH GREWAL's family trust (J&J Family Trust).  P.G. advised that M.D. signed an Intercreditor Agreement[3] making the $14,400,000 loan from the family trust subordinate to P.G.'s $7,000,000 loan at the loan closing.[4]

13.     P.G. provided a copy of the referenced Intercreditor Agreement dated September 3, 2018.  A review of the Intercreditor Agreement revealed that it was allegedly signed by M.D. as the trustee of the J&J Family Trust and that the J&J Family Trust made a $14,400,000 subordinate loan to the borrower, Vintro Hotels and Resorts Ohio, LLC.  The Intercreditor Agreement was signed by INDERJIT SINGH GREWAL as the borrower of the subordinate loan.

14.     P.G. advised that the purchase of the Maui Sands Resort and loan closed in September 2018[5].  A review of records later obtained from P.G. identified that the loan closed on

---

[3] An Intercreditor Agreement is a contract between two more creditors. Such an agreement comes into effect when the borrower has two (or more) lenders. The lenders sign a contract among themselves stipulating all the needed points.

[4] A subordinated loan is a type of debt that receives a lower priority level in terms of its claim to a company's assets when the company goes bankrupt. If a company defaults on its debts, the debts have an order of priority that determines when or if they will receive payment.

[5] A loan "closing" is the final step in the process of buying and financing a real estate property. It's also called the "settlement." This is when all of the parties in the loan transaction sign legal documents, and distribute funds, after and transfer ownership of the property.

September 6, 2018 and funds were disbursed on September 7, 2018.  It was arranged so that two separate closings occurred at the same time because of the trust.  One of the closing agents was located in Sandusky, Ohio and was closed by Southern Title of Ohio, Ltd. and the other closing agent was INDERJIT SINGH GREWAL's attorney H. G., of the G. Law Firm, Branson, Missouri.  INDERJIT SINGH GREWAL provided an email allegedly from H.G. confirming that H.G. had received $14 million from the J&J Family Trust.

15.      P.G. provided a copy of the email referenced in the preceding paragraph.  A review of the email reveals that on September 6, 2018, at 2:36 p.m., inderjitgs@yahoo.com sent the following email to P.G.'s attorneys, K.B. and T.B.:

Subject: Fw: Fwd: Maui Sands Closing

T.B.,

As requested

> From:  H.G.'s email address
> Date: September 6, 2018 at 2:25:53 PM EDT
> To: inderjitgs@yahoo.com
> Subject: Re: Maui Sands Closing


> Inderjit,

> I have received $13,909,225.30 to be held in escrow for the closing of the asset purchase of Maui Sands,… per Purchase & Sale Agreement dated, January 23, 2018.  The aggregate, net amount to be released to the sellers by me upon closing will be $11,950,000.00.
> Let me know if you need any additional information.

> Sincerely,

> H.G.

FRAUD REGARDING LOAN ESCROW

16.      On November 25, 2019, P.G. advised that prior to closing the loan in September 2018, it was further agreed by P.G., INDERJIT SINGH GREWAL, and their respective attorneys

that $2 million of the $7 million loan would be placed in escrow for improvements, much like a

construction loan[6].  It was further agreed that the funds would not be disbursed until after

invoices had been paid by INDERJIT SINGH GREWAL.  After closing, P.G. was provided with

an invoice from a construction firm, A.V.L. representing that A.V.L. had been paid

approximately $627,000 on a contract to fabricate new railings for the Maui Sands Resort's

waterpark.  An email was sent to KS2 and he confirmed that A.V.L. had been paid the

approximately $627,000.  Therefore, P.G. agreed to release approximately $627,000 to Vintro

Resorts and Hotels Ohio, LLC, INDERJIT SINGH GREWAL's business, from the escrow.

     17.      P.G. later provided numerous emails he maintained in reference to this loan.

Affiant reviewed P.G.'s emails and located an email from inderjitgs@yahoo.com dated

September 11, 2018 to P.G. and T.B. (P.G.'s attorney) which read as follows:

> T.B.,
>
> Attached are for your review;
> 1. Complete bid for Waterpark. Please note at the bottom of the bid that we have
> made a payment of $627,375.00
> 2. …
> 3. Wiring instruction for the Title Company to wire the funds to.
>
> Please let me know if you have any additional questions.
>
> Regards
>
>
> Inderjit

Affiant later obtained bank and phone records which identified that INDERJIT SINGH

GREWAL was located in the Northern District of Ohio at the time he sent this email.  Affiant

knows that Yahoo maintains its servers in California.  Therefore, Affiant believes this email was

---

[6] Generally in a construction loan, the payments from the lender come in installments as the project
completes new stages of development.

an interstate communication in furtherance of the fraud scheme in violation of 18 U.S.C. §§ 1349 and 1343 (i.e., conspiracy and wire fraud).

18.     P.G. advised that INDERJIT SINGH GREWAL created fake memos and fake wire transfers which were provided to P.G. in order to attempt to receive additional funds from the escrow.  The fake memos and wire transfers were provided as proof that payment had been made for work done on the Maui Sands Resort.  However, P.G. was able to determine the invoices were false so the funds were never released from escrow.  After receiving the invoices, P.G. traveled to the Maui Sands Resort to review the work being done.  While in Sandusky, Ohio, P.G. went to A.V.L.'s offices and spoke with the owner, B.L.  During this encounter, B.L. told P.G. that he had never completed any work on the Maui Sands Resort and he was not paid by INDERJIT SINGH GREWAL.

19.     P.G. provided a copy of a January 28, 2019 email from Inderjitgs@yahoo.com to P.G.  The subject line of the email read "Payment Proof and lien waiver" and attached to the email was a pdf file[7] which contained a waiver and release on progress payment in the name of A.V.L. and three "CHASE" wire transfer summaries identifying that wires in the amounts of $67,866.05, $144,422.08, and $258,868.75 had been sent to A.V.L. on October 28, 2018, November 28, 2018, and December 28, 2018, respectively.  The summaries identified that they had been sent from the "Vintro opp account (…9736)."

20.     Affiant later obtained bank records from Chase Bank, N.A. for Vintro Hotels & Resorts Ohio, LLC, account number xxxxxxxxxxx9736.  Affiant reviewed the bank statements and other transactions from October 1, 2018 to December 31, 2018.  Affiant was unable to locate

---

[7] The Portable Document Format (PDF) is a file format developed by Adobe in the 1990s to present documents, including text formatting and images, in a manner independent of application software, hardware, and operating systems.

the wire transfers as described by the wire transfer summaries as set forth in the preceding paragraph.  Affiant therefore believes that INDERJIT SINGH GREWAL emailed false documents to P.G. from inderjitgs@yahoo.com in an attempt to fraudulently obtain funds from P.G.

OPERATION OF MAUI SANDS

21.     P.G. advised that the loan closing took place in September 2018 and the Maui Sands Resort was open through the end of the year.  The Maui Sands Resort was managed by INDERJIT SINGH GREWAL and KS2.  Mortgage payments were made on the loan to P.G.'s company only through the end of the year when the Maui Sands Resort closed and ceased operations.  A sign was placed on the door at the time advising to call a number which no one ever answered.

22.     P.G. advised that it was later discovered that after INDERJIT SINGH GREWAL and KS2 took over ownership of the Maui Sands Resort, all of the maintenance contracts such as the fire contracts were cancelled and they never paid the water, sewer, gas, electric, or property tax bills.

INTERVIEW OF ATTORNEY K.B.

23.     On November 27, 2019, P.G.'s Attorney K.B. was interviewed by Affiant in reference to a $7,000,000 loan P.G. provided to INDERJIT SINGH GREWAL doing business as Ventro Hotels and Resorts Ohio, LLC.  During the process of determining the feasibility of the loan, K.B. had several conference calls with INDERJIT SINGH GREWAL, P.G. and others including INDERJIT SINGH GREWAL's Attorney M.S.  During conference calls, it was stressed that "they" didn't want P.G. and his team to talk to the sellers. It was stated that the sellers were picky; they wanted to cancel the deal; they were ready to walk; and that the deal had been extended for several months when P.G. "came in."

9

24.     On November 27, 2019, K.B. explained that the Maui Sands Resort was a distressed property. The initial plan was for INDERJIT SINGH GREWAL to purchase the property, refinance or purchase the property through a construction loan while making improvements to the property, and then operate the property. INDERJIT SINGH GREWAL was unable to obtain a conventional loan and thereafter obtained the private loan through P.G.

25.     K.B. advised that Attorney M.S. was representing "Ventro" in its loan negotiations with K.B. and P.G. One of the items that M.S. was attempting to negotiate was the amount to be placed in escrow for repairs.  It was initially stated by P.G. that $5 million needed to go into escrow for repairs to the property.  It was eventually determined that $2 million was going to be placed in escrow.

26.     K.B. advised that she arranged that P.G. to hire a local attorney, T.B., of Cincinnati, Ohio, to manage the escrow.  After the loan was approved and funded, $7 million was wired to the Sandusky, Ohio-based closing agent.  From the $7 million, $2 million was then wired to T.B.'s trust account and placed in escrow for repairs.  The escrow agreement indicated that funds would be released only after invoices were paid and documents were provided as proof that the funds had been paid.

27.     K.B. recalled that INDERJIT SINGH GREWAL and his attorneys wanted to parcel out the transaction.  K.B. further explained that they wanted to close on the real estate separately from the purchase of the assets of the Maui Sands Resort.  The purchase of the assets of the Maui Sands Resort was to occur in a second transaction through attorney H.G. from Missouri acting as an escrow agent.

28.     K.B. advised that attorney H.G. closed the other side of the transaction. INDERJIT SINGH GREWAL was claiming that all of his funds were tied up in a trust.  K.B.

advised that K.B. and P.G. insisted on seeing the seller's closing statement and later received

some type of document outlining that the funds were received by Attorney H.G.

INTERVIEW OF LOAN BROKER J.L.

29.     On July 29, 2022, J.L. was interviewed by Affiant in reference to the Maui Sands

Resort loan.  J.L. is a loan broker/consultant. J.L. locates lenders for commercial investment

properties. In approximately 2017 to 2018, J.L. first met INDERJIT SINGH GREWAL. J.L

advised that INDERJIT SINGH GREWAL was constantly coming to J.L. asking to obtain

commercial loans to purchase various properties. None of the transactions ever developed into

anything besides the Maui Sands Resort and another property.  J.L. worked with INDERJIT

SINGH GREWAL to assist him with obtaining a loan to purchase the Maui Sands Resort.  J.L.

was a middle-man on the transaction.  Another middle-man on the transaction, P.B., would have

dealt directly with the lender.

INTERVIEW OF LOAN BROKER P.B.

30.     On May 13, 2020, P.B. was interviewed by Affiant in reference to the Maui Sands

Resort loan.  P.B. is in the business of commercial real estate financing.  P.B. has relationships

with banks and capital companies and puts the lending source and the buyers/individuals seeking

funding together.   In approximately 2018, P.B. was involved with locating funding for

INDERJIT SINGH GREWAL, the borrower, to purchase the Maui Sands Resort.  J.L. brought

the transaction regarding the Maui Sands Resort and INDERJIT SINGH GREWAL to P.B.  P.B.

was placed in direct contact with INDERJIT SINGH GREWAL who advised he was looking for

an acquisition loan to purchase the property.

31.     P.B. advised that he was unsuccessful in finding any commercial lenders for the

transaction.  P.B. then began discussing the transaction with another loan broker, M.M., who had

11

relationships with private lenders.  M.M. then introduced P.B. and INDERJIT SINGH

GREWAL to the lender, P.G.  P.B. never met M.M., INDERJIT SINGH GREWAL, or P.G., in

person and all of his communications with these individuals occurred over email or telephone.

32.     P.B. explained that throughout the transaction, P.B. received information

from INDERJIT SINGH GREWAL and then passed the information on to M.M. who passed the

information on to P.G., the lender.  In reference to all the information and documents which

P.B. would have forwarded to M.M., P.B. would have received the information via email from

INDERJIT SINGH GREWAL.  Some of the documents P.B. would have received from

INDERJIT SINGH GREWAL via email and then forwarded to M.M. included the following:

Signed Purchase Agreement

Business Financials

Personal Net Worth Statement

33.     P.B. advised that P.B. has been involved in commercial lending for six to seven

years and has closed on more than 10 transactions during that time.  P.B. further advised that

Loan to Value is important in commercial lending transactions.  Typically, in P.B.'s experience,

banks/lenders will not lend any higher than 75% of the property's value.  Furthermore, when the

loan involves renovations of an existing property, the maximum loan to value is even lower.

After being reminded of the total purchase price of approximately $19 million for the Maui

Sands Resort, P.B. advised that P.G.'s maximum loan amount was $7 million and INDERJIT

SINGH GREWAL was making up the difference of the purchase price.  M.M. advised that if

INDERJIT SINGH GREWAL did not provide the difference in funding, the loan to value on the

transaction would be greatly affected and the loan "wouldn't make sense."[8]

---

[8] Loan to value is calculated by dividing the loan amount by the value of the property.

INTERVIEW OF LOAN BROKER M.M.

34.     On April 28, 2020, M.M. was interviewed by Affiant in reference to the Maui Sands Resort loan.  M.M. advised that he "puts people or groups together" on private equity funding projects by locating funding for individuals that need to find non-traditional funding and putting them together with private equity lenders.  In 2018, M.M. learned from P.B., who also attempts to find funding for others, that INDERJIT SINGH GREWAL was attempting to obtain funding to purchase the Maui Sands Resort.  P.B. requested M.M.'s assistance in locating a private equity lender for a bridge loan.

35.     M.M. advised that P.B. was the loan broker and therefore P.B. had all of the direct conversations/communications with INDERJIT SINGH GREWAL, the borrower, and INDERJIT SINGH GREWAL's attorneys regarding the loan.  M.M. communicated with the lender, P.G. and M.M. sent P.G. numerous emails in reference to the transaction.  M.M. began communicating with P.G. on June 21, 2018 in reference to the potential loan.  Any emails, documents, etc. that M.M. would have sent/forwarded to P.G. would have been sent to M.M. from P.B.

36.     M.M. advised that during the period when P.G. was considering funding the loan, P.G. would request additional information and M.M. would forward the request to P.B. Whenever P.B. responded and/or forwarded information to M.M. he would carbon copy INDERJIT SINGH GREWAL on the emails.  M.M. reviewed his emails and identified numerous emails which were forwarded to M.M. from P.B. in July 2018.  INDERJIT SINGH GREWAL was copied on all of the emails sent to M.M. by P.B.  M.M. advised that INDERJIT SINGH GREWAL's email address is inderjitgs@yahoo.com and that was the only email address used by INDERJIT SINGH GREWAL.

13

INTERVIEW OF ATTORNEY K.H., AND K.P. AND S.P., THE SELLERS OF THE

MAUI SANDS RESORT

37.     On February 25, 2021, K.P., S.P., and their attorney, K.H., were interviewed

regarding the sale of the Maui Sands Resort.  K.P. and S.P. were members of an LLC that owned

the Maui Sands Resort prior to its sale in September 2018 to INDERJIT SINGH GREWAL.

K.P., S.P., and K.H. reported that in approximately December 2017, INDERJIT SINGH

GREWAL came to the Maui Sands Resort and stayed as a guest. INDERJIT SINGH GREWAL

came to the Maui Sands Resort after the Maui Sands Resort was featured on the TV show Hotels

Impossible. Hotels Impossible portrayed the Maui Sands Resort as being a run-down hotel.

While staying at the Maui Sands Resort as a guest, INDERJIT SINGH GREWAL spoke with

S.P.  INDERJIT SINGH GREWAL indicated that "we" are buying distressed properties and he

was interested in knowing if S.P. wanted to sell the Maui Sands Resort. At the time, another

company had a lease to purchase the Maui Sands Resort which had been signed in July 2017.

S.P. told INDERJIT SINGH GREWAL that if the company was not ready to purchase the

property, then you can make an offer.  The Maui Sands Resort was not listed with any

commercial or real estate broker at the time and K.P. and S.P. never listed the property for sale.

38.     Thereafter, in approximately December 2017, K.P. met with INDERJIT SINGH

GREWAL in Orlando, Florida.  K.P., INDERJIT SINGH GREWAL, and possibly KS2 had

dinner in Orlando. During the dinner, INDERJIT SINGH GREWAL was showing off his money

and trying to persuade K.P. that he was a good candidate to close the deal regarding the purchase

of the Maui Sands Resort.  While in discussions with INDERJIT SINGH GREWAL regarding

the purchase of the Maui Sands Resort, INDERJIT SINGH GREWAL claimed to have "a ton of

money" and he also claimed that he had funds in his wife's trust.

14

39.     K.P. and S.P. decided to move forward with INDERJIT SINGH GREWAL's purchase of MSR.  K.P. and S.P. reviewed a Letter of Intent signed by INDERJIT SINGH GREWAL.  The letter of Intent identifies that the Vintro Group of Companies LLC is going to purchase a property known as the Maui Sands Resort & Indoor Waterpark for a purchase price of $5,950,000.  K.P. and S.P. identified that they accepted the Letter of Intent and sent a signed copy to INDERJIT SINGH GREWAL on December 7, 2017.  INDERJIT SINGH GREWAL later provided a purchase and sales agreement which listed the purchase price as $5,950,000.

40.     K.P. and S.P. advised that on January 28, 2018, there was a water leak at the Maui Sands Resort which caused damage which was never repaired.  As a result of the damage, K.P. and S.P. gave INDERJIT SINGH GREWAL an additional credit of $1,100,000 on the purchase price of the Maui Sands Resort.  Therefore, K.P. and S.P. expected to receive $4,850,000 from the sale.  The Maui Sands Resort was sold to INDERJIT SINGH GREWAL in a closing which occurred in the first week of September, 2018.

PRIOR SEARCH WARRANT

41.     On June 22, 2020, at approximately 6:35 p.m., an application and affidavit authorizing a search and seizure warrant for INDERJIT SINGH GREWAL's Yahoo email account, inderjitgs@yahoo.com, was filed with the United States District Court for the Northern District of Ohio (3:20MJ5173) and a search and seizure warrant was signed by the Honorable U.S. Magistrate Judge James R. Knepp, II authorizing the same.  The affidavit alleges that INDERJIT SINGH GREWAL used inderjitgs@gmail.com to provide false information to P.G. in support of P.G. providing the $7,000,000 loan to purchase the Maui Sands Resort, that INDERJIT SINGH GREWAL provided false information in order to obtain funds from escrow

regarding the Maui Sands Resort, and that INDERJIT SINGH GREWAL provided false information to an insurance company regarding the Maui Sands Resort.

42.     Affiant issued the search warrant referenced in the preceding paragraph to Yahoo and later received a response which included email content of inderjitgs@gmail.com.  Affiant reviewed the email contents and located the following relevant emails which Affiant believes were sent in interstate communication in furtherance of the wire fraud conspiracy in violation of in violation of 18 U.S.C. §§ 1349 and 1343.

a.     On December 4, 2017, INDERJIT SINGH GREWAL emailed a letter of intent to purchase the Maui Sands Resort for $5,950,000 to KS2.  This email establishes that INDERJIT SINGH GREWAL intended to purchase the Maui Sands Resort for an amount ($5,950,000) significantly less than the $18,950,000 he reported to the lender, P.G.  As set forth above, INDERJIT SINGH GREWAL actually purchased the Maui Sands Resort for approximately $4,850,000.

b.     On December 7, 2017, INDERJIT SINGH GREWAL emailed a scanned copy of the letter of intent to purchase the Maui Sands Resort for $5,950,000 to K.P., the partial owner of the Maui Sands Resort.

c.     On January 23, 2018, K.P., the seller of the Maui Sands Resort, sent INDERJIT SINGH GREWAL a contract for Vintro Hotels and Resorts LLC to purchase the Maui Sands Resort for $5,950,000.

d.     On or about February 10, 2018, INDERJIT SINGH GREWAL emailed J.L. a contract for the purchase of the Maui Sands Resort indicating a purchase price of $18,950,000.  As set forth above, J.L. is a loan broker.  This information was later forwarded to P.G., the lender in support of making the loan.  Affiant reviewed the

16

contract with a purchase price of $18,950,000 and identified that except for the purchase price, it is identical to the contract signed with the sellers.

e.  On March 5, 2018, INDERJIT SINGH GREWAL sent an email to KS2 which contained the 2016 financial statement for the Maui Sands Resort.  Affiant obtained financial statements from K.P. and S.P., the sellers of the Maui Sands Resort, and identified that the attached financial statement matched.    Therefore, Affiant believes this was the actual 2016 financial statements.  The listed total revenue for 2016 is $3,836,795 and the listed net profit is $362,170.

f.  On or about March 7, 2018, INDERJIT SINGH GREWAL emailed KS2 2016 and 2017 financial statements for the Maui Sands Resort and requested that KS2 obtain a broker's price opinion[9].  Affiant identified that the financial statements had been altered and revenues increased to make the Maui Sands Resort appear more profitable than reality.  For example, the listed total revenue for 2016 is $8,035,176 and the listed net profit is $2,817,833, compared to the actual revenue and profit as set forth in the preceding paragraph.

g.  On or about March 7, 2018, INDERJIT SINGH GREWAL emailed J.L. the altered and significantly inflated 2016 and 2017 financial statements for the Maui Sands Resort and a personal financial statement of INDERJIT SINGH GREWAL. The personal financial statement file was labeled, "Inderjit net worth 013118.pdf."  As set forth below, Affiant believes the personal financial statement

---

[9] A broker's price opinion is a real estate professional's opinion of a properties' value.  Both broker price opinions and appraisals are based on real estate market data and the educated opinions of real estate experts. However, appraisers are licensed and regulated, and may be more objective than a real estate agent.

was greatly inflated.  Furthermore, this information was later forwarded to P.G., the lender, in support of making the loan.

h.  On or about March 8, 2018, KS2 emailed INDERJIT SINGH GREWAL a broker's price opinion for the Maui Sands Resort showing a value of $24 million. The header line of the email read, "fat bpo."  Affiant believes that "fat bpo" identifies that KS2 believed that the broker's price opinion of $24 million was "fat," or inflated.

i.  On July 9, 2018, P.B. wrote to INDERJIT SINGH GREWAL, "Inderjit, Can you provide the proof of funds that you are providing?"  Thereafter, approximately thirty-minutes later, KS2 sent an email to INDERJIT SINGH GREWAL which contained a bank statement for Wells Fargo Bank Account Number 2297 showing a balance of $17,354,639.  Affiant obtained records from Wells Fargo Bank for account number xxxxxx2297 in the name of Vitro Group of Companies LLC and identified that the account never had a balance greater than $3,800 during the month of July 2018.  Bank records further indicated that INDERJIT SINGH GREWAL was a signer on the account.  Minutes later on the same date, INDERJIT SINGH GREWAL emailed the false and inflated bank statement to P.B.  Furthermore, this information was later forwarded to P.G., the lender in support of making the loan.

REVIEW OF M.M. AND P.G. EMAILS

43.  On December 23, 2019 and May 11, 2020, Affiant received electronic medium containing emails received and sent by P.G. and M.M. in reference to the Maui Sands Resort loan, respectively.  A review of the emails revealed that on July 6, 2018, P.G. received several

18

emails from an email account associated with M.M.  The emails contained a net worth statement

for INDERJIT SINGH GREWAL, the Maui Sands Resort purchase agreement, Maui Sands

Resorts Profit and Loss statements from 2016 – 2018, and other documents.

44.    A review of an email received by P.G. on July 6, 2018 at 1:47 p.m. had two pdf

files attached.  One pdf file was labeled "Maui Sands Inderjit net worth 013118.pdf".  A review

of M.M.'s email reveals he received these documents in email from P.B. on June 6, 2018.

45.    A review of the file labeled, "Maui Sands Inderjit net worth 013118.pdf"

identified that it was the same document originally provided to Affiant by P.G. on November 25,

2019 as described in paragraph 10.  The document claimed INDERJIT SINGH GREWAL owned

the following business real estate totaling over $59 million as of January 31, 2018.

| Description | Percentage of Ownership | Value |
|---|---|---|
| Days Inn, Spokane, WA | 100% | $4,900,000 |
| Comfort Inn, Lewiston, ID | 100% | $4,300,000 |
| Colonnade Resort, Branson MO | 100% | $23,000,000 |
| Grand Regency, Branson, MO | 100% | $11,000,000 |
| Celebration Cove | 100% | $10,000,000 |
| Music City Center | 100% | $6,000,000 |
| | Total | $59,200,000 |

  a.  In addition, the following cash on hand was listed in INDERJIT SINGH GREWAL's net worth:

| Description | Percentage of Ownership | Value |
|---|---|---|
| Cash | 100% | $5,000 |
| Personal bank accounts | 100% | $1,832,540 |
| Real estate escrow account | 100% | $16,200,000 |
| | Total | $18,037,540 |

  b.  Including other assets such as personal property, personal real estate, and investment real estate, the document claimed for INDERJIT SINGH GREWAL to have net assets of over $85.7 million.

  c.  The document claimed INDERJIT SINGH GREWAL to have the following loans on the properties:

| Description | Percentage of Ownership | Value |
|---|---|---|
| Days Inn, Spokane, WA | 100% | $2,889,000 |
| Comfort Inn, Lewiston, ID | 100% | $2,142,000 |
| Colonnade Resort, Branson MO | 100% | $10,550,000 |
| Grand Regency, Branson, MO | 100% | $4,882,000 |
| Celebration Cove | 100% | $5,783,000 |
| Music City Center | 100% | $2,400,000 |
| | Total | $28,646,000 |

    d.  Including other liabilities for investment real estate, the document claimed that INDERJIT SINGH GREWAL had liabilities of over $29.4 million.

COMFORT INN – LEWISTON, IDAHO/DAYS INN SPOKANE, WASHINGTON

46.     Affiant interviewed INDERJIT SINGH GREWAL's former brother-in-law, O.D. O.D. is the brother of INDERJIT SINGH GREWAL'S ex-wife, M.D.  O.D. advised that he owned the Comfort Inn in Lewiston, Idaho and that he was a partial owner of the Days Inn in Spokane, Washington.  O.D. advised that INDERJIT SINGH GREWAL never had any ownership interest in either property.  O.D. further advised that there was only one Comfort Inn in Lewiston, Idaho.  Based upon the foregoing, Affiant believes that INDERJIT SINGH GREWAL's statement that he owned the Comfort Inn in Lewiston, Idaho and the Days Inn in Spokane, Washington was false and fictitious.

COLONNADE RESORT – BRANSON, MISSOURI

47.     Affiant reviewed the property tax records of the Colonnade Resort, Branson, Missouri.  Affiant learned that Branson, Missouri is located in Taney County, Missouri.  A review of the Taney County, Missouri assessor's website identified that the owner of the property in 2018 was G.J.J. LLC care of G.L.R.E.F. LLC and that the assessed value of the

property was $1,665,757.  As set forth in paragraph 45, the listed value for this the property on

INDERJIT SINGH GREWAL's net worth statement was $23 million.

GRAND REGENCY RESORT – BRANSON, MISSOURI

48.     Affiant reviewed the property tax records of the Grand Regency Resort, Branson,

Missouri.  A review of the Taney County, Missouri assessor's website identified that the owner

of the property in 2018 was G.L.R.E.F. LLC and that the assessed value of the property was

$1,708,619.  As set forth in paragraph 45, the listed value for this the property on INDERJIT

SINGH GREWAL's net worth statement was $11 million.

49.     Affiant reviewed the Missouri Court's website and identified that in July 2016,

G.L.R.E.F. LLC filed a lawsuit in Taney County against Colonnade Acquisition LLC, Grand

Regency Resorts LLC, Music City Center LLC, and INDERJIT SINGH GREWAL.  On May 19,

2017, a consent judgement and order was filed in the case and a judgement for $9,500,000

against Colonnade Acquisition LLC, Grand Regency Resorts LLC, Music City Center LLC, and

INDERJIT SINGH GREWAL was agreed to amongst the parties.

50.     On April 16, 2020, Affiant interviewed attorney K.P. of St. Louis, Missouri.  K.P.

represented GLREF, LLC in a lawsuit in Branson, Missouri against Grand Regency LLC,

Colonnade Acquisitions LLC, Music Center, LLC, INDERJIT SINGH GREWAL, and the

homeowners' associations for those properties.  Grand Regency Resorts LLC and Colonnade

Acquisitions LLC each consisted as one condominium building and accompanying land.  There

was no hotel at Grand Regency Resorts LLC and Colonnade Acquisitions LLC but INDERJIT

SINGH GREWAL operated Grand Regency Resorts LLC and Colonnade Acquisition LLC as a

hotel by renting out the condominiums for short term stays.  The condominiums were also sold

as time shares.  INDERJIT SINGH GREWAL had a management company that operated the rental and maintenance of the condominiums on a day-to-day basis.

51.     K.P. advised that G.L.R.E.F. LLC had originally provided a refinance loan to Grand Regency Resorts LLC, Colonnade Acquisition LLC, and Music City Center LLC.  The lawsuit was further complicated because the sale of timeshares were involved and INDERJIT SINGH GREWAL, Grand Regency Resorts LLC, and Colonnade Acquisition LLC no longer owned all of the properties as they had been sold off in "bits and parts."  On July 22, 2016, the petition was filed against Grand Regency Resorts LLC, Colonnade Acquisition LLC, Music City Center LLC and the homeowners' associations.  The petition was filed after the loan was declared in default by G.L.R.E.F. LLC.  Payment was demanded on July 15, 2016.

52.     K.P. advised that in June 2017, a judgment was entered in the lawsuit in favor of G.L.R.E.F. LLC.  Shortly after the judgement was entered, Grand Regency Resorts LLC and Colonnade Acquisition LLC filed bankruptcy to attempt to prevent the sale of the properties at foreclosure.  Affiant reviewed the bankruptcy court filings and identified that on July 23, 2017, the bankruptcy was dismissed due to the case being filed in bad faith.

53.     K.P. advised that a foreclosure sale for the two condominium buildings owned by Grand Regency Resorts LLC and Colonnade Acquisition LLC was held on September 19, 2017 and G.L.R.E.F. LLC was the only bidder on the properties.  Thereafter, the deeds were recorded transferring ownership of the properties from the individual owners and Grand Regency Resorts LLC, Colonnade Acquisition LLC, and INDERJIT SINGH GREWAL to G.L.R.E.F. LLC on November 14 and 22, 2017.  K.P. was asked if INDERJIT SINGH GREWAL had any ownership interest in the properties as of January 2018 and K.P. advised that INDERJIT SINGH GREWAL had no ownership interest in the properties at that time.

54.     Based upon the foregoing, Affiant believes that INDERJIT SINGH GREWAL significantly overestimated the value of the Grand Regency Resort and the Colonnade Resort.  In addition, although the document claimed that the properties were adding over $18 million in net worth for INDERJIT SINGH GREWAL, at the time INDERJIT SINGH GREWAL had no ownership interest in the properties at all.  Although Affiant did not attempt to verify every asset listed on the INDERJIT SINGH GREWAL net worth statement, Affiant believes that INDERJIT SINGH GREWAL's net worth statement was significantly inflated and was not an accurate picture of INDERJIT SINGH GREWAL's net worth.

EMAIL RECEIVED BY P.G. ON AUGUST 1, 2018

55.     On August 1, 2018, at 10:20 a.m., P.G. received an email from INDERJIT SINGH GREWAL using the email account inderjitgs@yahoo.com.  The subject of the email read, "price allocation updated."  Attached to the email was a .pdf file labeled "Allocation of Purchase Price.pdf."  The file was a .pdf file which read as follows:

ALLOCATION OF PURCHASE PRICE

MAUI SANDS

| | |
|---|---|
| Cash | $0 |
| Accounts Receivable | $0 |
| License to Operate | $50,000 |
| Real Estate | $7,000,000 |
| Furniture and Fixtures | $2,519,000 |
| Equipment | $7,410,000 |
| Non-compete Agreement | $75,000 |
| Goodwill | $1,500,000 |

23

| Inventory | $368,000 |
| Personal Property | $28,000 |
| Total | $18,950,000 |

Affiant believes that the purpose of the document sent from inderjitgs@yahoo.com was to justify the inflated sales price of $18,950,000.

INTERVIEW OF M.D.

56.     On August 29, 2022, M.D. was interviewed and provided the following information.  M.D. was formerly married to INDERJIT SINGH GREWAL from October 1999 to September 2008.  M.D. and INDERJIT SINGH GREWAL have two male children together.  In order to support their sons, the J&J Family Trust was established in 2012.  M.D. is the trustee of the J&J Family Trust.

57.     The J&J Family Trust was initially funded with a $2,000,000 deposit.  This was the highest value the trust ever had.  M.D. never had a conversation with INDERJIT SINGH GREWAL regarding the trust loaning him $14,000,000 to purchase the Maui Sands Resort.  M.D. explained the J&J Family Trust never had that type of money to loan.

58.     M.D. reviewed the Intercreditor Agreement dated September 6, 2018 between M.D. as trustee of the J&J Family Trust and P.G.'s business.  M.D. reviewed the signature of M.D. on page four of the document and stated that it was not her signature and she did not sign the document.

INTERVIEW OF H.G.

59.     On July 19, 2022, Attorney H.G. was interviewed and provided the following information.  INDERJIT SINGH GREWAL was a client of H.G. from 2012 to 2019.  H.G. was involved in the purchase of the Maui Sands Resort but H.G. does not believe that he was the

24

attorney of record. H.G. did not handle the closing for this property.  For the Maui Sands

transaction, H.G. was never provided $14,000,000.  H.G. spoke on the phone with INDERJIT

SINGH GREWAL about the Maui Sands Resort transaction. KS2 was also involved in the

transaction. KS2 was the realtor involved in property location.

60.     A second closing for the Maui Sands Resort never took place at or through H.G.'s

office.  H.G. does not recall any plans for a second closing to take place through his office either.

H.G. was shown an email from INDERJIT SINGH GREWAL (inderjitgs@yahoo.com) to T.B.

and others dated September 6, 2018 at 2:36 p.m. (referenced above in paragraph 15). The email

contains an email from H.G.'s email account to Inderjitgs@yahoo.com. H.G. stated that he does

not believe that he sent this email.  H.G. identified that the first sentence of the paragraph was

not indented which he usually does.  Furthermore, H.G. never received $13 million and would

not have said that he did.  H.G. further stated that he usually has an administrative assistant draft

his documents and then he (H.G.) edits them and the administrative assistant thereafter sends

them. The administrative assistants use a different email address than the one listed.

INTERVIEW OF B.L., A.V.L.

61.     On April 20, 2022, B.L. was interviewed and provided the following information.

In approximately January 2018, KS2 contacted B.L. asking that his Sandusky, Ohio-based

construction, A.V.L., business provide repairs to the Maui Sands Resort's waterpark tower's

stairs.  After being initially contacted, B.L. met KS2 and INDERJIT SINGH GREWAL at the

Maui Sands Resort.  Later, INDERJIT SINGH GREWAL and KS2 explained that they wanted to

remodel the Maui Sands Resort and they started that they were not local and did not know any

contractors who could get this done.  B.L. was hopeful for the opportunity, but that INDERJIT

SINGH GREWAL and KS2 kept changing the work to be done. Although numerous discussions

took place and B.L. prepared several proposals over a lengthy period of time, A.V.L. never

conducted any work for the project.

62.      B.L. reviewed the document described by P.G. in paragraph 16 (the proposal

which identified that $627,365 had already been paid) and recalled that while he was at the Maui

Sands Resort discussing work to be completed, INDERJIT SINGH GREWAL filled out a check

representing a down payment, but he never provided the check to B.L. INDERJIT SINGH

GREWAL then told B.L. that INDERJIT SINGH GREWAL needed to hold the check until he

had enough money in the account.  Later, INDERJIT SINGH GREWAL sent a text to B.L.

asking to show that a portion of the proposal was paid and INDERJIT SINGH GREWAL

provided B.L. with the check number, date, etc.  Therefore, B.L. amended the proposal as such

per INDERJIT SINGH GREWAL's request even though he had never been provided the check.

B.L. emailed the amended proposal to INDERJIT SINGH GREWAL on September 17, 2018.

Affiant knows that Yahoo maintains its servers in California.  Therefore, this email from B.L. in

Sandusky, Ohio to INDERJIT SINGH GREWAL, who was also in Ohio at the time, was an

interstate wire communication in furtherance of the fraud scheme in violation of 18 U.S.C. §§

1349 and 1343 (i.e., conspiracy and wire fraud).

63.      B.L. reviewed the documents including the wires to A.V.L. described by P.G. in

paragraph 19.  As set forth in paragraph 19, P.G. alleged that INDERJIT SINGH GREWAL

made up wire transfers to attempt to obtain funds from the escrow.  B.L. advised that the wire

transfers are "bogus" and his company never received funds from Vintro Hotels and Resorts

Ohio LLC.  A.V.L. never did any work for Vintro Hotels and Resorts Ohio LLC and they never

invoiced them as such.

NORTHERN DISTRICT OF OHIO INTERSTATE WIRE TRANSFER

64.     Affiant learned from P.G. that he maintains a bank account with Wells Fargo Bank in Michigan.  Affiant further identified that the closing agent for the transaction, Southern Title of Ohio, Ltd., maintains a bank account at Civista Bank in Sandusky, Ohio.  Therefore, the September 6, 2018, wire transfer of $7,000,000 which funded the loan to purchase the Maui Sands Resort and the escrow was an interstate wire transfer culminating in the Northern District of Ohio, Western Division.  Affiant further believes that the wire transfer was submitted in furtherance of the fraud scheme in violation of 18 U.S.C. §§ 1349 and 1343 (i.e., conspiracy and wire fraud).

## **CONCLUSION**

65.     In summary, P.G. thought he was loaning INDERJIT SINGH GREWAL $7,000,000 to purchase and repair the Maui Sands Resort based on GREWAL's representation that the sales price was approximately $19,000,000.  Based on this representation, P.G. was loaning GREWAL less than half the value of the property.  In truth, the purchase price was only $4,850,000, meaning P.G. loaned GREWAL 144% of the property's value.  This left P.G. vastly under-secured and at risk of substantial financial loss should the loan default, which it did.  GREWAL, moreover, attempted to steal even more money from P.G., as GREWAL used false invoices and other communications to convince P.G. that he should release the portion of the loan meant for repairs when no repairs had been completed.  GREWAL executed the scheme using the numerous false and fraudulent pretenses, representations, and promises recounted above.

66.     Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that from on December 2017 through September 2018, in the Northern District of Ohio, Western Division, the defendant, INDERJIT SINGH GREWAL, KS2,

and others conspired to conduct wire fraud regarding the purchase and renovation of the Maui Sands Resort in violation of 18 U.S.C. §§ 1349 and 1343 (i.e., conspiracy and wire fraud).

Therefore, I am submitting this affidavit in support of an arrest warrant authorizing the arrest of INDERJIT SINGH GREWAL.

_____

Federal Bureau of Investigation
Special Agent David Gardner (FBI)

Sworn to via telephone after submission by reliable electronic means pursuant to Fed. Crim. R. 4.1 and 41(d)(3) this 23rd day of September, 2022.

_____

Darrell A. Clay
United States Magistrate Judge